IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOUGLAS & HEATHER DUELL, On Behalf of D.D., a Minor Child,<br><br>            Plaintiffs,<br><br>      v.<br><br>KAWASAKI MOTORS CORP., U.S.A., et al.,<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br> Civil No. 12-7273 (JBS/AMD)<br><br><br>       **OPINION** |

APPEARANCES:

Michael M. Mulligan, Esq.
317 Shell Road
P.O. Box 432
Carney's Point, N.J. 08069
     Attorney for Plaintiffs

Robert A. Assuncao, Esq.
James Simon Coons, Esq.
ANSA ASSUNCAO, LLP
Two Tower Center Boulevard, Suite 1600
East Brunswick, N.J. 08816
     Attorneys for Defendant Kawasaki Motors Corp., U.S.A.

Delia A. Clark, Esq.
William J Cattie, III, Esq.
RAWLE & HENDERSON LLP
401 Route 73 North
40 Lake Center Executive Park, Suite 200
Marlton, N.J. 08053
     Attorneys for Defendant East Coast Cycles, Inc.

**SIMANDLE,** Chief Judge:

## I.  INTRODUCTION

    This matter comes before the Court on a motion to dismiss

for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), brought by Defendant East Coast Cycles, Inc., a Delaware corporation whose principal place of business is also in Delaware. [Docket Item 11]. This case arises from a motorcycle accident allegedly caused by a defective throttle mechanism assembled by Defendant East Coast Cycles ("East Coast"). Because East Coast (1) conducts business with residents of New Jersey via the Internet, (2) knowingly conducts significant business with residents of New Jersey through the Powersports East showroom, (3) targets residents of New Jersey through its website and social media, and (4) advertises in a regional publication distributed in New Jersey, the Court concludes it has personal jurisdiction over the moving Defendant. Therefore, the Court will deny East Coast's motion to dismiss.

## II. BACKGROUND

The facts of this case are drawn from the Amended Complaint and are accepted as true for the purposes of this motion. Defendant East Coast Cycles operates a regional motorcycle store, Powersports East, at 620 Pulaski Highway in Bear, Delaware, which sells multiple brands of motorcycles and power equipment. (Am. Compl. [Docket Item 3] at 2; Def. Opp'n at 1.) Defendant is an authorized dealer of Kawasaki motorcycles. (Am.

Compl. ¶ 2.) East Coast does not have, and has never had, any employees, sales representatives, other agents based in New Jersey, nor does it have a place of business in New Jersey. (Lynn Nathan First Aff. ¶¶ 7-11.)

On November 18, 2010, Plaintiffs Douglas and Heather Duell, New Jersey residents, purchased a new Kawasaki motorcycle from East Coast as a Christmas present for their minor son, who is identified in this litigation by his initials "D.D." (Am. Compl. ¶¶ 1, 3.) Plaintiffs did not operate or modify the motorcycle between the time of purchase and Christmas Day. (Id. ¶ 4.) D.D. first operated the motorcycle on December 25, 2010, at which time an accident occurred, injuring D.D. (Id. ¶ 1.)

On November 26, 2012, Plaintiffs commenced this action against Defendants East Coast Cycles, Kawasaki Motors Corp., U.S.A., and others, alleging that East Coast negligently assembled the motorcycle's throttle mechanism, causing D.D. to crash the bike and sustain serious and permanent injuries. (Id. ¶¶ 1, 5, 8.)

East Coast filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Co-defendant Kawasaki and the Duells oppose the motion and have mustered evidence through certifications and documents supporting the exercise of personal jurisdiction in New Jersey over East Coast.

## III. JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Section 1332(a) confers jurisdiction over matters where the amount in controversy exceeds $75,000 and all parties are citizens of different states. § 1332(a).

Here, Plaintiffs are citizens of New Jersey. East Coast is a Delaware corporation with its principal place of business in Delaware. (Am. Compl. at 2.) Kawasaki is a Delaware corporation with its principal place of business in California. (Kawasaki Answer to Am. Compl. [Docket Item 7] at 1.) Plaintiffs assert that the monetary damages in this case exceed $100,000. (Am. Compl. at 4.) Therefore, there is complete diversity of citizenship and the amount in controversy is greater than $75,000. This court has subject matter jurisdiction.

## IV. STANDARD OF REVIEW

When reviewing a motion to dismiss, the district court "must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Machulsky v. Hall, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (citing Carteret Savings Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). To defeat a motion to dismiss for lack of personal jurisdiction,

4

"the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." Flagship Interval Owner's Ass'n, Inc. v. Philadelphia Furniture Mfg. Co., No. 09-1173, 2010 WL 1135736, at *3 (D.N.J. Mar. 22, 2010) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)). The plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Turner v. Boyle, No. 12-7224, 2013 WL 1409903, at *3 n.1 (D.N.J. Apr. 8, 2013) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d Cir. 1984)); Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir. 1990). Courts may rely upon matters outside the pleadings to determine jurisdictional facts. Turner, 2013 WL 1409903, at *3 n.1.

Where, as here, no evidentiary hearing was held on the jurisdictional issue, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.

2004)).[1] A plaintiff "may meet this burden by establishing that the court has either 'general' or 'specific' jurisdiction." Merco, Inc. v. S. Cal. Edison Co., No. 06-5182, 2007 WL 1217361, at *3 (D.N.J. Apr. 24, 2007) (citing Provident Nat'l Bank, 819 F.2d at 437)). The Court can exercise specific jurisdiction when the defendant purposely directs its activities at the forum, the litigation arises out of at least one of those activities, and the exercise of jurisdiction would "comport with 'fair play and substantial justice.'" O'Connor, 496 F.3d at 317 (quoting Burger King v. Rudzewicz, 471 US. 462, 463 (1985)). If a defendant maintains "continuous and substantial" forum contacts, general jurisdiction can be exercised. Id. at 321.

## V. DISCUSSION

Rules 4(e) and 4(h) of the Federal Rules of Civil Procedure permit a district court to assert personal jurisdiction over a non-resident corporate defendant to the extent the forum state allows. See Fed. R. Civ. P. 4(e)(1) (stating an individual may be served "following state law for serving a summons. . . in the state where the district court is located"); Fed. R. Civ. P. 4(h)(1)(A) (stating a corporation may be served "in the manner

---

[1] "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 331 (3d Cir. 2009).

prescribed by Rule 4(e)(1)"). New Jersey's long arm statute confers jurisdiction to the extent allowed by the U.S. Constitution. <u>Miller Yacht Sales, Inc.</u>, 384 F.3d at 97.

The Due Process Clause of the Fifth Amendment requires a plaintiff to show that a defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). When a jurisdictional defense is raised, the plaintiff must show that the Court can exercise specific or general jurisdiction. <u>Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc.</u>, 983 F.2d 551, 554 (3d Cir. 1993). To establish general jurisdiction, "the plaintiff must 'show significantly more than mere minimum contacts,' and that the defendant's forum contacts are 'continuous and substantial.'" <u>Roscoe v. P.O.W. Network</u>, No. 10-1043, 2010 WL 3906793, at 2 (D.N.J. Sept. 30, 2010) (citing <u>Gehling v. St. George's Sch. Of Med., Ltd.</u>, 773 F.2d 539, 541 (3d Cir. 1985)).

Generally, in order for personal jurisdiction to be established, the defendant must take some action to purposefully avail himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>J. McIntyre Mach., Ltd. v. Nicastro</u>, 131 S. Ct. 2780,

2787 (2011) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 255 (1958)). The Court must consider if the defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." <u>Marten v. Godwin</u>, 499 F.3d 290, 297 (3d Cir. 2007) (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)). If the sale of a product to a resident of a foreign state is not an isolated occurrence, but "arises from the efforts of the manufacturer or distributor," it is not unreasonable to subject the seller of the product to suit in that state if "its allegedly defective merchandise has there been the source of injury to its owner or to others." <u>World-Wide Volkswagen</u>, 444 U.S. at 297.

**A. East Coast's Contacts with New Jersey**

**1. Sales to New Jersey Residents**

East Coast generates between $6.5 million and $7 million in revenue every year. (Lynn Nathan First Aff. ¶ 16.) The vast majority of East Coast's revenue is derived from sales of motorcycles in its Delaware store. From 2002-2012, East Coast sold 1,903 vehicles to residents of New Jersey, out of a total 15,943 vehicles. (Lynn Nathan Second Aff. ¶¶ 9, 10.) In other words, New Jersey residents accounted for 12 percent of all motorcycle sales at Powersports East during that decade. Those

8

sales generated more than $10.3 million in revenue over the ten-year period. [Docket Item 23-5 at 39.] According to Defendant Kawasaki's records, which are derived from sales data provided by East Coast, Kawasaki has determined that East Coast sold 207 Kawasaki units directly to New Jersey residents during its tenure as a Kawasaki dealer since 2002, which is 10.5 percent of East Coast's overall sales activity as a Kawasaki dealer alone, exclusive of the other brands East Coast sells. (Rein Decl. ¶¶ 6-8.) East Coast's sales of Kawasaki motor products to residents of the neighboring states of New Jersey (207 units), Pennsylvania (281 units), and Maryland (383 units), totaling 871 units, were nearly as great as its total sales to Delaware residents over this period. (Rein Decl. ¶¶ 6-9.)

East Coast also sells parts and accessories, but not motorcycles, through its website to customers both inside and outside of Delaware. (Lynn Nathan First Aff. ¶ 16.) East Coast derives $36,000 from Internet sales annually. (Lynn Nathan Second Aff. ¶ 8.) New Jersey residents account for roughly $1,000 of East Coast's Internet sales each year. (Lynn Nathan First Aff. ¶ 16.)

The Duells, New Jersey residents, assert they have purchased four motorized vehicles from East Coast since 2003, of which the present motorcycle, purchased in 2010 was the fourth.

(Duell Cert. ¶ 5-7, 9.) East Coast knew that all sales to Plaintiffs would be used at their home in Quinton Township, Salem County, New Jersey. (Duell Cert. ¶ 10.) East Coast warranted and serviced the Duells' vehicles and "always offered to pick up the vehicles" from the Duells' residence in New Jersey for servicing. (Duell Cert. ¶ 8.)

Plaintiff's home in Quinton Township, New Jersey is about 15 miles "as the crow flies" from East Coast's showroom in Bear Delaware, a short distance across the Delaware Memorial Bridge. (Duell Cert. ¶ 8.)

### 2. Internet Presence

As stated above, East Coast admits that it conducts regular business over the Internet directly with residents in New Jersey, in the amount of approximately $1,000 per year.

Evidence suggests East Coast intentionally targeted out-of-state consumers, including those in New Jersey. As recently as February 20, 2013, East Coast's website contained an "About Us" page that included the language "make Powersports East the place to shop whether you live in Delaware, Pennsylvania, New Jersey, or Maryland." (Coons Decl. Ex. F; Mulligan Cert. ¶ 5) (emphasis added). East Coast's website previously contained language stating that the store was easily "accessible from New Jersey via the Delaware Memorial Bridge." (Coons Decl. Ex. H) (emphasis

added). It appears that both of these explicit references to New Jersey have since been removed in early April 2013, contemporaneously with the present dispute over personal jurisdiction. (Mulligan Cert.¶ 16.) The "About Us" section now reads: "make Powersports East the Place to shop no matter where you live. Come to Delaware!" (Coons Decl. Ex. D.) The reference to the Delaware Memorial Bridge (which connects Delaware and New Jersey) has been deleted. East Coast continues to have one express reference to New Jersey on its website. (Opp'n at 17.) In a section advising customers on selling used vehicles, the site addresses New Jersey bike owners directly: "Dirt bikes from NJ also need a title." (Coons Decl. Ex. O.) The current website does not specifically mention any of the other surrounding states. Id.

East Coast also maintains a Facebook page, YouTube page, and Twitter account to share information with consumers and to promote events they sponsor. East Coast's YouTube account contained a video promoting a "Tax Free Delaware" to entice customers from neighboring jurisdictions that charge sales tax, including New Jersey, to purchase vehicles in Delaware. (Coons Decl. Ex L.) Indeed, Plaintiff Douglas Duell stated that avoiding paying New Jersey sales tax by making this major purchase in Delaware was a motivating factor in dealings with

East Coast. (Duell Cert. ¶ 3.) East Coast's Facebook page included a promotion offering free tickets to the 35th Annual Kawasaki Race of Champions in Englishtown, New Jersey for correctly answering a trivia question. (Coons Decl. Ex. M.) East Coast's Facebook page also advertised an annual motorcycle ride along the New Jersey shore that originated in New Jersey. (Opp'n at 7.) Additionally, East Coast uses its website to sign-up customers for an electronic newsletter. (Coons Decl. Ex. I.) The number of New Jersey subscribers, followers and "friends" on these various platforms is not contained in the record.

### 3. Other Contacts

East Coast advertises in a regional motorcycle magazine that is produced in New Jersey and distributed free of charge throughout the mid-Atlantic region, including in New Jersey. (Mot. Br. at 10; Lynn Nathan First Aff. ¶ 13.) East Coast claims to run these advertisements in order to meet franchise advertising requirements. (Reply Br. at 7.) East Coast did not begin advertising in the publication until after the date of D.D.'s accident. (Lynn Nathan First Aff. ¶ 13.)

### B. Specific Jurisdiction

For a tort claim, the Defendant's contacts with the forum state need not be the proximate cause of the plaintiff's injuries. O'Connor, 496 F.3d at 320. The Third Circuit has

chosen not to adopt a definitive test to determine how close the relation must be between the contact and injury for specific jurisdiction to apply. Id. When deciding tort claims, the Court should "approach[] each case individually and take[] a realistic approach." Id. (quoting Miller Yacht Sales, Inc., 384 F.3d at 99-100).

Specific jurisdiction requires a "closer and more direct causal connection than that provided by the but-for test." Id. at 323. Specific jurisdiction is "the cost of enjoying the benefits" or the laws of another forum. Id. In order to maintain a balance in the reciprocal exchange, the Court must "keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." Id.

East Coast argues that Plaintiffs' claims do not arise out of any specific contact it has with New Jersey. East Coast argues that it did not target New Jersey and that the claim arises out of a transaction that took place in Delaware. (East Coast Br. at 6.)

Kawasaki contends that specific jurisdiction is appropriate because East Coast specifically targeted and marketed to New Jersey, conducted substantial business in the forum, and had a preexisting business relationship with Plaintiffs. (Kawasaki

Opp'n at 20.) Further, Kawasaki argues that East Coast entered into multiple transactions with Plaintiffs knowing that they were New Jersey residents. Kawasaki alleges East Coast also travelled into New Jersey to make repairs on those vehicles and as a result availed itself to the laws of New Jersey.[2] Id.

The injury in this case cannot be said to arise out of a specific contact East Coast maintained with New Jersey so the Court cannot exercise specific jurisdiction.

While a company that chooses to sell its products over the Internet to residents of a foreign state may under certain circumstances open itself up to specific personal jurisdiction in that state, see Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1126 (W.D. Pa. 1997), this action does not arise from any of East Coast's internet sales. Further, Plaintiffs do not plead that their purchase of the allegedly faulty Kawasaki motorcycle arose out of any advertising or social media efforts by East Coast. The Internet activities of East Coast pertaining to their advertising directed toward New Jersey customers will be highly relevant to the assertion of general jurisdiction, discussed below.

---

[2] There is no evidence in the record to support the allegation that East Coast physically entered New Jersey. The Duells contend that East Coast offered to travel to New Jersey to make repairs but set forth no evidence of any instance where East Coast actually did so. See Cert. of Douglass Duell, ¶ 8.

14

Specific jurisdiction may be exercised where the defendant reaches out beyond its home state and creates ongoing relationships and obligations with citizens in another forum. Remick v. Manfredy, 238 F.3d 248, 256-57 (3d Cir. 2001). The defendant must commit some act to reach out to a plaintiff in another forum and receive the "benefits and protections of the forum's laws" to support specific jurisdiction. Id.

Kawasaki argues that the Third Circuit has done away with the requirement that the nonresident initiate the relationship with the forum, finding instead that in "the commercial milieu, the intention to establish a common venture extending over a substantial period of time" that is the more important consideration. (Opp'n at 21.) (quoting General Elec. Co. v. Deutz AG, 207 F.3d 144, 151 (3d Cir. 2001)). The Court can exercise specific jurisdiction when the nonresident defendant has "regular and extensive communication a person in [the forum] in order to negotiate a business transaction that would . . . create rights and obligations among citizens of the state to perform certain duties." Coni-Seal, Inc. v. O'Reilly Automotive, Inc., No. 12-4568, 2013 149611, at *6 (D.N.J. Jan. 14, 2013) (citing Fiscus v. Combus Finance AG, No. 03-1328, 2006 WL 1722607, at *5 (D.N.J. June 20, 2006)). In Coni-Seal, the "extensive communications" consisted of over 5,000 e-mails and

phone calls and over 100 payments to New Jersey banks. Id. In Fiscus, the Court determined that phone calls "at least twice a week-often more frequently" qualified as "extensive communications." Fiscus, 2006 WL 1722607, at *7. Here, there is no evidence that East Coast maintained any extensive communications with the Duells to negotiate the sale of the allegedly defective motorcycle, and therefore the Court cannot exercise specific jurisdiction over East Coast.

Even if East Coast had an ongoing obligation to service Kawasaki vehicles in New Jersey, there is no evidence that it made any act to reach out to the Duells to initiate the transaction in question, nor that it performed maintenance in New Jersey on the vehicle in question. Without some act to initiate the sale, the Court cannot say that Plaintiff's injury arose out of one of East Coast's contacts. Therefore, the Court cannot exercise specific jurisdiction over East Coast.

## C. General Jurisdiction

If the presence of a product in a particular forum is not "fortuitous, but is the result of deliberate sales efforts, . . . the company [can] reasonably anticipate being involved in litigation there." Hendrickson v. Reg O Co., 657 F.2d 9, 15 (3d Cir. 1981). The courts have applied general jurisdiction to companies that advertise and "regularly solicit sales within the

relevant forum." In re Chocolate Confectionary Antitrust Litigation, 641 F. Supp. 2d 367, 383 (M.D. Pa. 2009).

When looking at the totality of East Coast's contacts with New Jersey, this Court determines general jurisdiction to be appropriate. The facts of this case are analogous to those of Metcalfe, in which the Third Circuit exercised general jurisdiction based on a small number of sales by a boat retailer to residents of a foreign forum, combined with advertisements targeting that forum and ongoing contractual obligations in that jurisdiction. In Metcalfe, the non-forum defendant retailer sold 11 boats with warranties to residents of the forum and advertised on its website that boats could be rented in the forum. Id. The court stated that sales to the forum should be viewed cumulatively and not in isolation when examining general jurisdiction. Id. A defendant does not need to have an "overwhelming presence" in the forum for general jurisdiction to be appropriate, but only "continuous and systematic" contacts. Id. The Third Circuit determined in Metcalfe that the 10-year warranty that accompanied the sale of the boats created an ongoing commitment to that forum, making general jurisdiction over the non-forum defendant appropriate. Id.

If the contacts in Metcalfe satisfied constitutional due process, the contacts here surely do as well. East Coast sold a

significantly larger number of vehicles to the forum, over a
sustained period of time, than the defendant in Metcalfe, and
East Coast continued to service vehicles for New Jersey
residents, even offering to travel into New Jersey to perform
maintenance on those bikes. East Coast's website clearly evinces
an effort to target the New Jersey market. There would be no
reason to include the language "Come to Delaware!" if East Coast
were targeting only customers already living in state. Extolling
the benefits of Delaware, coupled with East Coast's close
proximity to New Jersey, as well as the language that previously
expressly addressed New Jersey consumers, suggests a concerted
effort to target customers from New Jersey. Additionally, East
Coast targeted customers in New Jersey through online promotions
and giveaways and regional advertising produced and distributed
in New Jersey.

All of these efforts paid off for East Coast. New Jersey
customers have purchased more than 1,900 vehicles, or 12 percent
of all vehicles sold at Powersports East, which account for more
than $10.3 million in revenue from New Jersey residents over the
past decade. These numbers are substantial. East Coast certainly
can be said to benefit from the tax laws in New Jersey and
Delaware that encourage New Jersey consumers to buy big-ticket
items like motorcycles in Delaware rather than in New Jersey.

These contacts, viewed cumulatively with evidence of East Coast's Internet sales, which are direct contracts with New Jersey customers, advertising, and targeting of New Jersey customers on its website, show more than minimum contacts between East Coast and New Jersey. These contacts may not be an "overwhelming presence" but are "continuous and systematic" such that the Court may exercise general personal jurisdiction over East Coast. See Metcalfe, 566 F.3d at 335. Plaintiffs and Kawasaki have met their burden of establishing a prima facie case of jurisdiction.

East Coast argues that the Third Circuit's ruling in Gehling makes exercising general jurisdiction over it improper. In that case, the plaintiff attempted to sue St. George's School of Medicine (located in Grenada) in Pennsylvania for damages resulting from a race held in the West Indies. Gehling, 773 F.2d at 539. Gehling argued that the number of Pennsylvania students enrolled at St. George's, the defendant's advertisements in national newspapers, appearances by the Chancellor and Vice-Chancellor of the school in Philadelphia, and a joint international program with Waynesburg College in Pennsylvania were sufficient contacts to exercise general jurisdiction. Id. at 541-42. The defendant attempted to argue that these contacts were not enough and specifically that personal jurisdiction

could not be established in Pennsylvania because the school derived such a small percentage of its revenue from students from Pennsylvania. Id. at 543.

The Third Circuit agreed that no personal jurisdiction existed, but it did so because the activities that led to the claim all took place in the West Indies, not in Pennsylvania, and not because a small portion of the school's revenue came from Pennsylvania. Id. at 543. The Court stated that "[a]dvanced educational institutions typically draw their student body from numerous states," and subjecting schools to personal jurisdiction based on their student body would allow "non-forum related claims in every state where a member of the student body resides." Id. In making its determination that general jurisdiction could not be established, the Third Circuit found that the fact that only a small percentage of the school's total income was attributable to Pennsylvania activities was "irrelevant." Id. Therefore, East Coast's argument that general jurisdiction cannot be established because its sales to New Jersey residents is "de minimis" is not supported by the Court's ruling in Gehling.

Gehling is distinguishable from the present case. Here, the Duells' bike was purchased in Delaware and was taken to their residence in an adjacent state approximately eight miles from

the store. In Gehling, the school was located in Grenada, far from Pennsylvania. Additionally, a medical school education offered at a fixed location is very different than a motorcycle, which is mobile and is designed to travel. In Gehling, there was no doubt that all educational activities would occur in Grenada. East Coast, however, transacted with the Duells knowing full well that these bikes would be operated in New Jersey and not Delaware. Indeed, a significant percentage of East Coast's vehicles are purchased by New Jersey residents for use in New Jersey, and that activity gives rise to Plaintiffs' cause of action. In Gehling, on the other hand, the "business" of the medical school -providing a medical education- was not implicated in the plaintiff's cause of action arising from a race. Moreover, East Coast generated over $10 million from New Jersey residents over the past decade, a number that can hardly be considered insignificant. Gehling may further be distinguished because East Coast sells goods to New Jersey residents directly over the Internet, and there were no direct sales and shipments of products to residents of the non-forum jurisdiction in Gehling. The contacts in this case are far more significant, purposeful, and ongoing than those in Gehling.

Even though East Coast does not have any physical presence in New Jersey, that fact is not necessary to establish general

jurisdiction. The numerous continuous and purposeful contacts East Coast maintains with New Jersey allow the Court to exercise general personal jurisdiction. East Coast directly targeted New Jersey residents, created ongoing relationships with customers in New Jersey, and has a primary sales and service area over part of the New Jersey market, all of which allow the Court to establish general personal jurisdiction. East Coast has maintained contacts with New Jersey for at least 10 years showing that they are continuous in addition to being substantial. These contacts are sufficient to show that East Coast could reasonably expect to be brought to court in New Jersey without offending the Due Process Clause of the constitution. Exercising general personal jurisdiction over East Coast in no way "offend[s] the traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316.

## V. CONCLUSION

For the reasons explained above, the Court's exercise of personal jurisdiction over Defendant East Coast Cycles is proper. The motion to dismiss will be denied. The accompanying Order will be entered.


**August 1, 2013**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge